UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDRÉ CRAWFORD PRESTON                         CIVIL ACTION

VERSUS                                         NO. 10-1667

NEWELL NORMAND ET AL.                          SECTION "I" (2)


## REPORT AND RECOMMENDATION

Plaintiff, André Crawford Preston, is a pretrial detainee currently incarcerated in the Jefferson Parish Correctional Center ("JPCC").  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against five defendants, Jefferson Parish Sheriff Newell Normand, Deputy Chief Sue Ellen Monfra, LPN Joy Perez, LPN James Dibble and RN Jean Llovet.  Preston alleges that he was negligently given the wrong medication, resulting in a fall, and that he did not receive adequate medical care for the injuries he suffered in the incident. He seeks "money damages for pain and mental suffering."  Record Doc. No. 1 (Complaint at ¶ V).

On September 2, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Daniel R. Martiny and Jason Thrower, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Preston testified that, at the time of the conference, he was incarcerated in the JPCC awaiting trial on charges of second degree attempted murder, possession of firearms and distribution of crack cocaine. Preston confirmed that his claims in this case arise from an incident on February 14, 2010, when one of the nurses at JPCC gave him the wrong medication, resulting in a fall in which he hurt himself.  He stated that, since the fall, he is not receiving his medication.

Preston testified that on the date of the incident, he was awaiting delivery of medication that had been prescribed after one of his teeth was pulled.  He stated that he was supposed to receive antibiotics for the tooth extraction.  He testified that defendant "Nurse Joy" was distributing medications to inmates that day and that another inmate named Akeem Baseley had just come into the cell area from lockdown and asked Nurse Joy if she had his medication.  Preston testified that Nurse Joy replied she would have to "look into it," but when she came to Preston's cell, she called Preston by the other inmate's name:  "'Akeem, come get your medication.'"  Preston said, "I'm not thinking nothing of it, because I know she was just talking to Akeem. When I get up, I get the medication, and it's two different colors, two circle white pills, . . . but I took them.  After I took them, I laid back down."

2

Preston stated that he got up about ten or 15 minutes later to talk to another inmate, but he began to feel dizzy and his heartbeat began to race.  He said he notified guards, but they denied that he had been given the wrong medication.  Preston confirmed the reference in his JPCC medical records, Record Doc. No. 26, that the medicine he was supposed to be receiving was Naprosyn, but alleged that he did not get Naprosyn that day.

Preston testified that he was taken to the JPCC  medical services department that night, the evening of February 14th, after he "flooded" his cell to get the attention of ranking officers. He testified that he told medical personnel at that time what had happened, they checked his vital signs, found that they were good and returned him to his cell, although he was feeling drowsy.  He said medical personnel told him there was nothing they could do for him because there was no proof that the nurse had given him the wrong medication.  He said that he was taken back to the medical department a few hours later for a second visit after he had fallen as a result of dizziness.

Asked what injuries he suffered in the fall, Preston testified that he "had a laceration to the eyebrow and a scrape on the side of my eye."  He said he was taken to the medical department after the fall, where he told the nurse what had happened; she put a strip over the laceration and sent him back to the dorm without any medication.  He denied the notation in the medical records that he received Motrin during his second visit

3

to the medical department.  Preston said he sent a request for further medical treatment a few days later, but no one saw him for the laceration, although he was subsequently scheduled to be seen by a dentist concerning his earlier tooth extraction. He said he refused to see the dentist because his mouth had healed by that time.

Preston said that his complaint about his medical care in this case is that he was given the wrong medication, then denied appropriate care for the lacerations and headache suffered in the resulting fall.  He said the lacerations healed within two to three weeks of the fall.

As to defendant Nurse Joy Perez, he reiterated that she is the person who gave him the wrong medication. He stated that when Nurse Joy gave him the wrong medication, it was an accident: "she didn't do it to me on purpose."  He said that Nurse Joy acted negligently, after which defendants failed to treat the problem.  As to defendant James Dibble, plaintiff said he was the nurse at JPCC who saw Preston on his first visit to the medical department, said there was nothing that could be done, and sent Preston back to his cell.  As to defendant Nurse Jean Llovet, plaintiff testified that she was head of the medical staff, but she did not see Preston that night.  He identified defendant Sue Monfra as the JPCC warden.  He stated that neither Llovet nor Monfra were personally involved in the incidents about which he complains in this case, but were the supervisors of those who were directly involved, Perez and Dibble.

Preston further testified that Sheriff Normand, who is also named as a defendant, was not personally involved in the incidents, but he was sued because he is the overall superior officer in charge of the other defendants.

On cross-examination, Preston stated that he has had no medical or pharmacological training. He said he does not specifically know what medication he had been prescribed for his tooth extraction. He understood that he was taking antibiotics, but he had no reason to dispute that he had actually been prescribed Naprosyn. He said he understood that his prescribed dosage was 200 milligrams for two weeks, but he did not dispute that it may have been 500 milligrams. He did not recall the name of the dentist who had extracted his tooth or the date his tooth was removed, but he did not dispute the name and date that appear in the medical records. Preston confirmed that he initially received his correct medication, and that it may have been prescribed for only five days. He said he is aware that Naprosyn comes in different forms and dosages because he was informed of that by medical personnel at JPCC.

Preston testified that he did not realize he was taking another inmate's medication when he took it. He stated that he felt the effects of the medication about ten or 15 minutes later. He said that when he was taken to the medical department initially, his heart rate, temperature and blood pressure were all checked. He confirmed that on his second trip to the medical department after he fell, his vital signs were checked again,

5

and a "glue strip" was applied to his brow laceration. Directed to the JPCC medical records containing his February 17, 2010 request for medical attention, he testified that he was not seen in response to that request.  He denied that the medical notation record indicating that he was not complaining about the injuries he suffered in the fall was accurate.  He disagreed with the medical record indicating that he was referred to a medical assistant concerning a headache. He said he was seen by a nurse only for sleeping problems and not for headaches resulting from his fall.

Preston reiterated that Nurse Joy had not intentionally given him the wrong medicine, that it was an accident, and that it had not happened previously. He said Nurse Llovet explained to him that Naprosyn comes in two different forms and told him that he had not been given the wrong medication. He confirmed that he was seen by medical personnel after his fall, but alleged that they did not give him any medication for the resulting injuries. He denied the reference in the medical records that he was given Motrin on the two days immediately following his fall and said those records were incorrect.

Before the Spears hearing, defendants Llovet, Dibble and Perez, the JPCC medical personnel, filed a motion to dismiss.  Record Doc. No. 14.  Because the motion relied in part on attached exhibits outside of the pleadings, I converted it to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(b) and ordered plaintiff to respond in writing.

6

Record Doc. No. 17.  Plaintiff did so, Record Doc. No. 19, and I have considered his

written response and his testimony in connection with this report and recommendation.

## ANALYSIS

I.      STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened

by the court as soon as practicable after docketing, regardless whether it has also been

filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80

(5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are

frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action

is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994)

(quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as

amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th

Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls,

examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law

or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[1]

II.   <u>MERE NEGLIGENCE</u>

Preston conceded that defendant Nurse Joy Perez's alleged provision to him of the wrong medication was an accident, resulting from negligence, and not intentional.  Such allegations fail to state a cognizable federal Section 1983 claim as a matter of law.  Under these circumstances, plaintiff's testimony at best asserts a state tort law negligence claim, not a claim of civil rights violations cognizable under Section 1983.  Claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."  <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986).   In a number of contexts, other courts have determined that allegations amounting to negligence cannot support a Section 1983 claim.  <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); <u>Hare v. City of Corinth</u>, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence insufficient to support failure to protect claim under Section 1983); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328-29 (5th

---

[1] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); <u>Doe v. Taylor Indep. Sch. Dist.</u>, 975 F.2d 137, 142 (5th Cir. 1992), <u>vacated on other grounds</u>, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a <u>constitutional</u> tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

Prison officials therefore cannot be liable under Section 1983 for the injuries, if any, resulting from having been given the wrong medication, as alleged by plaintiff. This claim should be dismissed as legally frivolous and for failure to state a claim under Section 1983. If Preston wants to pursue negligence claims under state law, he is free to do so in state court.

III.   <u>MEDICAL CARE</u>

Preston contends that he did not receive adequate medical care at JPCC for the ill effects of having been given the wrong medication, including dizziness resulting in a fall that caused lacerations and headaches.

Preston was a pretrial detainee during the time period about which he complains. Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable

11

medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id.

12

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered
to be an episodic act or omission, and the deliberate indifference standard enunciated in
Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591
F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51,
53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th
Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

     In Estelle, the Supreme Court held that a convicted prisoner may succeed on a
claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he
demonstrates that there has been "deliberate indifference to serious medical needs" by
prison officials or other state actors.  Only deliberate indifference, "an unnecessary and
wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes
conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia,
428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  "Deliberate
indifference" means that a prison official is liable "only if he knows that the inmates face
a substantial risk of serious harm and [he] disregards that risk by failing to take
reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The
Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

     An inmate must satisfy two requirements to demonstrate that a prison official has
violated the Eighth Amendment.  If the court finds that one of the components of the test

is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  <u>Cooper v. Johnson</u>, No. 09-40223, 2009 WL 4279851, at *2 (5th Cir. Dec. 1, 2009) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991)); <u>accord</u> <u>Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837; <u>accord</u> <u>Tamez</u>, 589 F.3d at 770 (citing <u>Thompson v. Upshur County</u>, 245 F.3d 447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton disregard</u> for any serious medical needs.'"  <u>Brewster v. Dretke</u>, No. 08-40685, 2009 WL

3738532, at *3 (5th Cir. Nov. 10, 2009) (quoting <u>Domino v. Texas Dep't of Crim.</u>

<u>Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Board</u>

<u>of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted))

(emphasis added); <u>accord</u> <u>Tamez</u>, 589 F.3d at 770. "'Subjective recklessness,'" as used

in the criminal law, is the appropriate test for deliberate indifference."   <u>Norton v.</u>

<u>Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish

that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue.  <u>See</u>

<u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with

immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the

"deliberate indifference" standard applies and Preston must allege facts sufficient to

establish that defendants knew he faced a substantial risk of serious harm and disregarded

that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly

fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the conditions he described, consisting of dizziness and a fall resulting in lacerations and headaches, presented serious medical needs that posed a substantial risk of harm during Preston's incarceration at the jail. This complaint does not rise to the level of a <u>serious</u> medical need for purposes of constitutional analysis. <u>See</u> <u>Lockett v. Suardini</u>, 526 F.3d 866, 877 (6th Cir. 2008) ("minor lacerations and cuts" and soreness in two fingers, which were no longer obvious upon medical examination within 24 hours after altercation, were not serious medical needs); <u>Vaughn v. City of Lebanon</u>, 18 Fed. Appx. 252, 2001 WL 966279, at *20 (6th Cir. 2001) (no serious medical need when treating physicians analogized plaintiff's pepper-spray-related symptoms to a case of poison ivy and when his cuts, bruises and abrasions from struggle were visible but not permanent); <u>Dawes v. Coughlin</u>, 159 F.3d 1346, 1998 WL 513944, at *1 (2d Cir. 1998) (small laceration not a serious medical need); <u>Davis v. Jones</u>, 936 F.2d 971, 972-73 (7th Cir. 1991) (one-inch laceration not serious medical need); <u>Benitez v. Locastro</u>, No. 9:04-CV-423, 2010 WL 419999, at *7 (N.D.N.Y. Jan. 29, 2010) (bruises and a laceration not serious medical conditions); <u>Willacy v. County of Brevard</u>, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (inmate who alleged that he suffered numerous lacerations, contusions, bruising and burning sensation in his eyes after being attacked by another

inmate, but did not seek further medical assistance after his wounds were cleaned, failed to assert a serious medical need).

Even assuming, however, without concluding that plaintiff's condition presented serious medical need for constitutional purposes, Preston has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated at the jail.   Preston testified that he was taken to the medical department at JPCC twice in response to the incident.  On both visits, he was seen by nurses.  The nurses merely checked his vital signs, found that they were good, and took no further action the first time clearly because, in the exercise of their professional judgment, they could not conclude that Preston had in fact been given the wrong medication. On his second visit, the lacerations suffered in the fall were appropriately bandaged and treated.  Both the tooth extraction and the lacerations quickly healed.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical

needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when first plaintiff's injury was not severe enough to warrant medical attention and healed on its own in a few days, and when second plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528, 2007 WL 2827547 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Preston has alleged delay in receiving medical care in that he did not receive the treatment he thought was necessary on his first visit to the medical department and he has expressed dissatisfaction with the extent or effectiveness of his overall treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

18

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298.  No such showing can be made in this case in light of the extensive medical care Preston has received during his pre-trial incarceration.

Contentions like Preston's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see

also <u>Rowe v. Norris</u>, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no

constitutional violation when inmate disagreed with physician's choice of medication);

<u>Marksberry v. O'Dea</u>, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999)

(plaintiff who alleged inadequate treatment for broken hand failed to state constitutional

violation, when he was examined by physician and received x-rays and medication);

<u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical

services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284

(allegations establishing provision of medical treatment found inconsistent with inference

of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim

that defendants were deliberately indifferent to his serious medical needs.  For all of the

foregoing reasons, plaintiff's complaints in this case about his medical care advance a

legally frivolous argument and fail to state a claim for relief under Section 1983.

IV.   <u>NO SUPERVISORY LIABILITY</u>

Preston makes no claim that Llovet, Monfra or Sheriff Normand were personally

involved in any of the alleged acts or omissions upon which plaintiff's claims are based.

"There is no respondeat superior liability under section 1983."  <u>Eason v. Thaler</u>, 73 F.3d

1322, 1327 (5th Cir. 1996).  Thus, these defendants cannot be held liable under Section

1983 pursuant to a theory of respondeat superior simply because the persons allegedly

responsible for plaintiff's injury, if any, were in their employ or under their supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).  To hold these defendants liable, plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [these defendants] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Sanders, 950 F.2d at 1159-60.  In the instant action, plaintiff has failed to establish either of these two criteria.

In addition, no allegations sufficient to state a liability claim against these defendants under Section 1983 as persons with final authority for making municipal policies or decisions have been stated.  Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986).  A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.  Monell, 436 U.S. at 691-95; Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008).  Without alleging a particular custom, usage or policy for which these defendants can be held constitutionally

liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

### RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2).

In light of the recommendation, **IT IS FURTHER RECOMMENDED** that defendants' motion to dismiss, which has been converted to a motion for summary judgment, be **DISMISSED AS MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

        New Orleans, Louisiana, this   17th   day of November, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.